

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.W. | ) | No. ED110708 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| | ) | |
| | ) | Honorable David H. Ash |
| | ) | |
| | ) | FILED: September 26, 2023 |

### Introduction

J.M.W. appeals from the juvenile court's judgment of disposition committing her to the custody of the Division of Youth Services ("DYS") following her being adjudicated delinquent on the offenses of third-degree assault, two counts of fourth-degree assault of a law enforcement officer, possession of intoxicating liquor by a minor, fourth-degree domestic assault, and engaging in behaviors injurious to her welfare. J.M.W. raises two points on appeal. J.M.W. first argues the juvenile court plainly erred in adjudicating her delinquent on the possession count because she was entitled to legal immunity as the subject of a medical emergency pursuant to Section 195.205.[1] J.M.W. next asserts the juvenile court erred in finding her delinquent on one count of assault in the fourth degree because she lacked the requisite mental state. Because J.M.W. did not facially establish substantial grounds for believing that the juvenile court's failure

---

[1] All Section references are to RSMo (Cum. Supp. 2021), unless otherwise noted.

to apply Section 195.205 sua sponte resulted in manifest injustice in the disposition, we decline to exercise our discretion to review Point One for plain error and deny the point. Because the record contains sufficient evidence that J.M.W. attempted to cause or recklessly caused physical injury or physical pain to the law enforcement officer, the juvenile court did not err in finding her delinquent on the contested charge of fourth-degree assault. Accordingly, we affirm the juvenile court's judgment.

Factual and Procedural History

On March 27, 2021, Mother took J.M.W., then fourteen years old, and two friends to the river. When Mother picked up J.M.W. and her friends a short time later, she believed J.M.W. had been drinking because she could smell alcohol on her. Upon arriving home, J.M.W. began screaming and knocked over a trashcan. J.M.W. got into an argument with her younger brother, then punched a mirror in her room. The mirror shattered and injured her hand, which bled, and "[t]here was blood all over." Mother did not keep alcohol in the home and observed that J.M.W. was intoxicated not only because of the smell of alcohol but because J.M.W. "doesn't really act like that." J.M.W. showered, and Mother tried to convince J.M.W. to treat her injured hand. J.M.W. threatened to kill herself and locked herself in her room. Mother was scared and could hear J.M.W. ripping posters off her wall and damaging her room. Mother did not feel like she could handle the situation on her own. Mother called the police.

Multiple police officers responded to the scene, including Dep. T.K., Dep. E.M., and Sgt. K.G. The police officers could see blood on the wall of J.M.W.'s room through a gap in the doorway, and J.M.W. told them several times that she wanted to die. The police officers were concerned with J.M.W.'s safety and kicked-in her door.

The police officers found J.M.W. sitting on her bed, naked, wrapped in a blanket, and visibly bleeding with marks on her arms. J.M.W.'s eyes were "extremely" glossy and red, and

2

she smelled like alcohol. There was an empty bottle of vodka on the floor. They tried to get her to put on clothes, but she refused. When the police officers approached her, she actively resisted by kicking and hitting them. The police officers attempted to restrain J.M.W., but she kept slipping away from them because she was covered in blood. The police officers managed to handcuff J.M.W., bring her to the living room, and get her into sweatpants. J.M.W. continued to kick and pull away from them. When Dep. T.K. attempted to restrain her from behind by grabbing her shoulders, J.M.W. bit his forearm, which still bore teeth marks a year later. J.M.W. kicked and head-butted Dep. E.M. J.M.W. struck Sgt. K.G. in the leg several times while she was violently thrashing. During the struggle, which lasted five to seven minutes, J.M.W. yelled obscenities and kept asking the police officers to kill her, specifically telling them to "kill me like you did George Floyd. Put your knee on my neck like you did to him." When paramedics arrived, they had to sedate J.M.W. in the ambulance in order to transport her to a hospital. Medical professionals had to sedate J.M.W. again at the hospital.

On May 3, 2021, Mother called the police when J.M.W. got into a fight with her sister ("Sister"), during which J.M.W. threw a lamp at Sister, striking Sister in the arm, and picked up a knife and threatened to stab Sister.

The Juvenile Officer ("JO") filed a First Amended Petition on May 20, 2021, alleging J.M.W. committed the following offenses: one count of felony assault in the third degree (for biting Dep. T.K.), two counts of assault in the fourth degree (for kicking Sgt. K.G. and Dep. E.M.), one count of possession of intoxicating liquor by a minor, and one count of domestic assault in the third degree (for injuring Sister). The First Amended Petition also alleged J.M.W. committed the offenses of engaging in behavior injurious to her welfare when she expressed

3

suicidal ideations to law enforcement officers, resisted being taken into custody, and injured herself by punching a glass mirror.

The juvenile court held an adjudication hearing. Testimony was adduced from Mother, Sister, Dep. T.K., Sgt. K.G., Dep. E.M., Detective E.D., and Dr. D.S. Dr. D.S., a psychiatrist specializing in treating traumatized youths, reviewed J.M.W.'s records and interviewed her and Mother. J.M.W.'s father had substance abuse issues and was physically abusive, then died from an overdose when J.M.W. was eleven years old. J.M.W. was hospitalized multiple times for mental health reasons. At thirteen years old, J.M.W. witnessed a friend get accidentally shot by Sister's boyfriend and die. Dr. D.S. diagnosed J.M.W. with severe post-traumatic stress disorder ("PTSD") with dissociative features and testified about J.M.W.'s trauma history and brain dysregulation.

Based on evidence at the hearing, the juvenile court found J.M.W. committed all charged delinquency offenses, except it lowered the domestic-assault offense to the fourth degree. On May 17, 2022, following a disposition hearing, the juvenile court entered its order and judgment of disposition committing J.M.W. to the custody of DYS. J.M.W. now appeals.

### Points on Appeal

J.M.W. raises two points on appeal. Point One argues the juvenile court plainly erred in finding her delinquent for being a minor in possession of intoxicating liquor because she was entitled to immunity under Section 195.205 in that the incident arose from mother's good-faith report that J.M.W. was the subject of an ongoing medical emergency. J.M.W. further contends that the plain error resulted in manifest injustice because had the juvenile court properly found her immune from liability, she would not have been found delinquent of the offense, which would have impacted the outcome of her disposition. Point Two maintains the juvenile court erred in finding J.M.W. delinquent for committing the offense of fourth-degree assault against

4

Sgt. K.G. because the mental state element was not proved by substantial evidence in that there was no reasonable inference J.M.W. had the purpose to cause physical pain, physical injury, or illness to Sgt. K.G.

Discussion

## I.      Point One—Immunity Defense

### A.      Standard of Review

J.M.W. alleges for the first time on appeal that Section 195.205, the medical emergency immunity statute, entitled her to immunity from the charge of being a minor in possession of alcohol. Preliminarily, J.M.W acknowledges that she did not preserve the issue for appellate review by raising it before the juvenile court. She requests we exercise our discretion to review the claim for plain error under Rule 84.13(c).[2]

"The decision of the juvenile division is presumed correct, and [the appellant] bears the burden of proving reversible error." Int. of K.E.H., 662 S.W.3d 201, 202 (Mo. App. S.D. 2023) (internal citation omitted). "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). We may grant discretionary plain error only where "the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" Int. of K.E.H., 662 S.W.3d at 204 (quoting State v. Brandolese, 601 S.W.3d 519, 526 (Mo. banc 2020)); see also Int. of J.C.S., 658 S.W.3d 260, 265 (Mo. App. S.D. 2023) (explaining the Supreme Court's plain-error review analysis in Brandolese applies with equal weight in civil juvenile proceedings).

---

[2] All Rule references are to Mo. R. Civ. P. (2021), unless otherwise noted.

5

As an error-correcting court, a key concern in reviewing unpreserved claims for plain error is that "[a] party should not be entitled on appeal to claim error on the part of the [juvenile] court when the party did not call attention to the error at [the hearing] and did not give the [juvenile] court the opportunity to rule on the question." In re S.R.J., Jr., 250 S.W.3d 402, 405 n.2 (Mo. App. E.D. 2008) (internal citation omitted). "Even statutory errors that are evident, obvious, and clear, must result in a manifest injustice or miscarriage of justice" to warrant plain-error review. Int. of J.C.S., 658 S.W.3d at 265 (quoting In re C.M.B.R., 332 S.W.3d 793, 908 (Mo. banc 2011), *abrogated on other grounds by* S.S.S. v. C.V.S., 529 S.W.3d 811, 816 n.3 (Mo. banc 2017)); see also In re R.S.L., 241 S.W.3d 346, 350 (Mo. App. W.D. 2007) (internal citation omitted) (noting "[e]ven objections that a juvenile officer or court failed to comply with mandatory requirements of the juvenile code must be properly preserved"). Missouri courts have found plain-error review unwarranted in juvenile cases where the claim on appeal did not facially establish substantial grounds for believing the juvenile court's disposition was impacted by the alleged error. See e.g., Int. of K.E.H., 662 S.W.3d at 204 (declining plain-error review of a claim alleging the JO delayed in filing its petition to certify the juvenile as an adult because any delay only resulted in a longer rehabilitation period and had no prejudicial impact on the certification process); In re N.J., 343 S.W.3d 362, 365–67 (Mo. App. S.D. 2011) (declining plain-error review of claims solely challenging the juvenile court's restitution order and not the underlying delinquency finding or disposition).

Here, J.M.W. asserts that failure to apply the medical emergency immunity statute, if determined to be erroneous, facially establishes manifest injustice because the delinquency adjudication on the possession count would not stand if she was immune from liability for that offense. However, although J.M.W. correctly asserts that prevailing on her claim would remove

6

the delinquency adjudication on the possession count, J.M.W. has not met her burden to facially establish that the adjudication on that count impacted the juvenile's court's overall disposition. See Int. of K.E.H., 662 S.W.3d at 204 (quoting Brandolese, 601 S.W.3d at 526). In particular, as the JO contends, the juvenile court still would have considered evidence of J.M.W.'s alcohol use regardless of whether she was charged with alcohol possession because the evidence was relevant to the context of the three assault charges, as the juvenile court shall receive all "evidence as may be relevant to determining the appropriate disposition in the interest of the juvenile[.]" Mo. R. Juv. P. Rule 128.03(c). Thus, J.M.W.'s substantial rights were not violated through the evidentiary proceedings. Further, while J.M.W. argues that the possession count could have "tipped the scales" in favor of committing J.M.W. to DYS, the possession count was only a minor misdemeanor relative to the other adjudicated offenses for which the juvenile court assumed jurisdiction under Section 211.031.1, including the felony of third-degree assault, two misdemeanor counts of fourth-degree assault, and one misdemeanor count of third-degree domestic assault. See P.L.S. v. Juv. Officer, 651 S.W.3d 885, 892 (Mo. App. W.D. 2022) (granting plain-error review of a misdemeanor count where the juvenile court's disposition rested at least in part on the juvenile's admission of guilt to that misdemeanor, which comprised one of only two acts of delinquency that supported the disposition). Given the serious assault offenses for which J.M.W. does not claim statutory immunity, and the juvenile court's consideration of her general welfare and circumstances, even were we to reverse and remand for the juvenile court to reconsider J.M.W.'s disposition absent the possession count, J.M.W. has not alleged plain error affecting her rights because she has not established substantial grounds for believing the disposition would change. Accordingly, J.M.W. has not met her burden to show that the

7

disposition, which is presumed correct, was reversible error on the grounds alleged in Point One. See Int. of K.E.H., 662 S.W.3d at 202 (internal citation omitted).

Because J.M.W. has not facially established substantial grounds for believing that the juvenile court's failure to apply Section 195.205 sua sponte resulted in manifest injustice in the judgment of disposition, we decline to review the unpreserved claim for plain error. See id. at 204 (quoting Brandolese, 601 S.W.3d at 526). Point One is denied.

## II. Point Two—Fourth-Degree Assault of a Law Enforcement Officer

### A. Standard of Review

J.M.W. challenges the sufficiency of the JO's evidence proving she had the requisite mental state to commit, were she an adult, fourth-degree assault of a law enforcement officer against Sgt. K.G. We review a sufficiency-of-the-evidence challenge on the merits, not as plain error, regardless of whether the sufficiency claim was preserved in the circuit court or adequately briefed on appeal. P.L.S., 651 S.W.3d at 892 n.5 (quoting State v. Claycomb, 470 S.W.3d. 358, 362 (Mo. banc 2015)). Therefore, reviewing juvenile proceedings in the same manner as court-tried cases, "we determine whether there was sufficient evidence from which a reasonable juror could have found the [juvenile] guilty beyond a reasonable doubt [of the alleged delinquent conduct], regardless of whether the case was tried by a jury or the court." Int. of T.P., 667 S.W.3d 224, 227 (Mo. App. E.D. 2023) (internal citation omitted). "We view the evidence and its reasonable inferences in the light most favorable to the verdict and ignore all evidence and inferences to the contrary." Id. (internal quotation omitted). "The credibility of witnesses and the weight to be given their testimony is a matter for the [juvenile] court, which is free to believe none, part, or all of their testimony." Id. (internal quotation omitted). However, issues of statutory interpretation are matters of law, which we review de novo. M.L.H. v. Juv. Officer,

8

634 S.W.3d 667, 673 (Mo. App. W.D. 2021) (citing Pearson v. Koster, 367 S.W.3d 36, 43 (Mo. banc 2012)).

B.     Analysis

### 1.     The Mental State for Fourth-Degree Assault

J.M.W. claims the JO failed to prove the mental state for fourth-degree assault with respect to the delinquency count involving Sgt. K.G. J.M.W. and the JO disagree about what the mental state of fourth-degree assault is for purposes of this appeal.

The statute governing the offense provides that "[a] person commits the offense of assault in the fourth degree if . . . [t]he person *attempts to cause or recklessly causes* physical injury, physical pain, or illness to another person[.]" Section 565.056.1(1), RSMo (2016) (emphasis added); M.L.H., 634 S.W.3d at 673. The JO alleged in its First Amended Petition that J.M.W., were she an adult, committed the offense of fourth-degree assault of a law enforcement officer by *attempting to cause* physical injury, physical pain, or illness to Sgt. K.G. by kicking him; the JO did not specifically allege that J.M.W. *recklessly* caused Sgt. K.G. physical injury. The JO used similar "attempted to cause" language in the other assault counts whose adjudications J.M.W. does not appeal. Because both the legislature and Supreme Court of Missouri have defined "attempt" as having the *purpose* to commit the offense, J.M.W. therefore reasons the JO had the burden to establish that J.M.W. had the *purpose* to cause physical pain or injury to Sgt. K.G.—elevating the mental state for fourth-degree assault from recklessness to purposefulness. In its responsive brief, the JO does not directly respond to J.M.W.'s "purpose" argument but primarily relies on jurisprudence discussing recklessness to argue it met its burden to prove fourth-degree assault.

This appeal does not present the first instance of a discrepancy in identifying the proper mental state for "attempt[ing] to cause physical injury" in assault offenses. See 32 MO. PRAC., Missouri Criminal Law 19:4 (2d ed.) (noting "[t]here is some confusion as to the culpable mental state for attempting to cause physical injury" in the first categories of assault and domestic assault in the fourth degree). In the context of domestic assault, the Southern District addressed the Supreme Court's holding in State v. Whalen, 49 S.W.3d 181 (Mo. banc 2001) that an attempted offense always requires proof of a purposeful mental state. State v. Ondo, 232 S.W.3d 622, 629 (Mo. App. S.D. 2007). Specifically, the Southern District distinguished Whalen from the legislature's use of the word "attempt" in the statutes for domestic assault: "[A]n attempt to cause physical injury under section 565.073 [RSMo (2000) second-degree domestic assault] requires a mental state of 'knowingly,' while attempt to cause physical injury under section 565.074 [RSMo (2000) third-degree domestic assault] requires a mental state of 'recklessly.'" Id. (citing State v. Blackburn, 168 S.W.3d 571, 576 (Mo. App. S.D. 2005)) (interpreting a mental state of knowingness for "attempts to cause or knowingly causes physical injury" and recklessness for "attempts to cause or recklessly causes physical injury").

Historically, Missouri law considered an attempted offense to have as an element the failure to complete the intended offense. State v. Rank, 667 S.W.2d 461, 462 (Mo. App. W.D. 1984) (per curiam). However, the general attempt statute now codifies the principle that, unless otherwise specified by the intended offense, an attempted offense is a lesser-included offense of the completed offense. Id.; see Section 562.012.3, RSMo (2016); see also, e.g., State v. Barbee, 568 S.W.3d 28, 33 (Mo. App. W.D. 2018) (internal citation omitted) (noting attempted first-degree statutory rape is a lesser-included offense of first-degree statutory rape); State v. Blair, 443 S.W.3d 677, 685 (Mo. App. W.D. 2014) (internal citation omitted) (noting attempted first-

10

degree robbery is a lesser-included offense of first-degree robbery); State v. Bryan, 60 S.W.3d 713 (Mo. App. S.D. 2001) (internal quotation omitted) (noting attempted forcible sodomy is a lesser-included offense of forcible sodomy). This principle—that an attempted offense is a lesser-included offense of the completed offense—is relevant here because J.M.W. logically cannot prevail in arguing the State could sufficiently prove the completed offense of fourth-degree assault yet fail to sufficiently prove the lesser-included attempted offense of the same. In other words, J.M.W. cannot elevate the mental state required to commit fourth-degree assault from recklessness to purposefulness simply on the grounds that the statute governing the offense, and the charging language in the First Amended Petition, contains the word "attempt."

We are not persuaded that the JO charged J.M.W. with an *attempted* delinquency offense in the sense of inchoate offenses as discussed in Whalen. In its First Amended Petition, the JO charged J.M.W. with fourth-degree assault, not *attempted* fourth-degree assault. The JO employed the precise language of Section 565.056.1(1), which includes the phrase "attempted" in defining fourth-degree assault as "attempts to cause or recklessly causes physical injury . . . [.]" Section 565.056.1(1), RSMo (2016). Adhering to the Southern District's interpretation of the mental state for "attempts to cause" within the similarly-worded domestic assault statutes, we find the mental state applicable here to be recklessness pursuant to the plain language of Section 565.056. See id.; Ondo, 232 S.W.3d at 629 (citing Blackburn, 168 S.W.3d at 576). Therefore, the JO's use of the phrase "attempted to cause" in its First Amended Petition did not change the elements of fourth-degree assault by requiring the JO to prove a higher mens reas that J.M.W. *purposefully* caused Sgt. K.G. physical injury. Rather, pursuant to the statute governing fourth-degree assault, the First Amended Petition established the JO's burden to prove that J.M.W.

11

attempted to cause or recklessly caused physical injury, physical pain, or illness to Sgt. K.G. See Section 565.056.1(1), RSMo (2016); M.L.H., 634 S.W.3d at 673.

## 2. Sufficiency of the Evidence

Having established the burden of proof for the requisite mental state for fourth-degree assault, we next consider the sufficiency of the evidence. "A person 'acts recklessly' or is reckless when . . . she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." M.L.H., 634 S.W.3d at 673 (quoting Section 562.016.4, RSMo (2016)). The "reasonable person" standard in a juvenile case must take into account the generalized characteristics of the juvenile's "age, capacity, and experience," which remains an objective standard that is not based on the juvenile's particular, individual life history. Id. at 673–74 (citing Mantia v. Mo. Dept. of Transp., 529 S.W.3d 804, 809–10 (Mo. banc 2017); I.D. v. Juv. Officer, 611 S.W.3d 869, 876 (Mo. App. W.D. 2020)); see also State v. Nathan, 522 S.W.3d 881, 908 (Mo. banc 2017) (Stith, J., dissenting) (quoting Miller v. Alabama, 567 U.S. 460, 471 (2012)) (noting "children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking"). "Intent can be proved by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident." I.D., 611 S.W.3d at 876 (internal quotation omitted); see also State v. Ingram, 662 S.W.3d 212, 222 (Mo. App. E.D. 2023) (internal quotation omitted) ("Because a person's mental state is rarely capable of being proven with direct evidence, '[p]roof of a requisite mental state is usually established by circumstantial evidence and permissible inferences.'").

12

M.L.H. assessed "how a hypothetical, reasonable [fourteen]-year-old child would act when facing similar circumstances (housed in a juvenile detention facility, and responding to directives from facility staff)" and found sufficient evidence supported the juvenile court's conclusion "that M.L.H. grossly deviated from what a reasonable [fourteen]-year-old in her circumstances would do, when she repeatedly struck [a detention aide] in the head with her fists, and beat [the aide's] head into the floor, in response to [the aide's] attempt to move M.L.H. aside so that [the aide] could exit the dayroom or summon help." M.L.H., 634 S.W.3d at 674 (finding sufficient evidence that the juvenile had the requisite state of recklessness for fourth-degree assault of a detention officer).

Here, J.M.W. kicked Sgt. K.G. in the leg several times when he and the other two police officers were attempting to restrain and clothe her. J.M.W. was screaming at the police officers and also kicked Dep. E.M. in the face and bit Dep. T.K. on the arm. Similar to the facts and analysis in M.L.H., J.M.W. was fourteen years old and, considering the reasonable standard for a child of similar age, capacity, and experience, J.M.W. would know that kicking and fighting reasonably could lead to injury. See id. at 673–74 (citing I.D., 611 S.W.3d at 876). J.M.W. adduced testimony from Dr. D.S. about her impulse control, specifically that J.M.W.'s toxic stress exposures over the course of her life meant J.M.W. would respond to a perceived threat by becoming hyper-aroused and going into fight-or-flight mode. Although J.M.W. points to Dr. D.S.'s testimony about her trauma history and PTSD with dissociative features as evidence that she did not understand the nature of her actions, we are not persuaded that the trial court erred in giving little weight to such testimony absent evidence focused on a mental or developmental disability impacting J.M.W.'s capacity to understand the nature of her actions. See Int. of T.P., 667 S.W.3d at 227 (internal quotation omitted). We very much appreciate the gravity of

13

J.M.W.'s experiences, including her father's abuse and overdose death and her friend's death. But the trial court did not err in finding J.M.W.'s background did not negate her ability to understand that "violently thrashing" and kicking poses a substantial risk of injuring someone and constitutes a gross deviation from what a reasonable fourteen-year-old in her circumstances would do. See M.L.H., 634 S.W.3d at 674. Accordingly, the JO adduced sufficient evidence that J.M.W. attempted to cause or recklessly caused physical injury to Sgt. K.G. See Section 565.056.1(1), RSMo (2016); M.L.H., 634 S.W.3d at 673.

Because sufficient evidence permitted a reasonable finding that J.M.W. had the requisite mental state to commit fourth-degree assault against Sgt. K.G., the juvenile court did not err in finding J.M.W. delinquent of the offense. See Int. of T.P., 667 S.W.3d at 227 (internal citation omitted). Point Two is denied.

## Conclusion

The judgment of the juvenile court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs

14